CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 0 8 2010

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TERRY GENE MARSHALL, | ) | |
| Plaintiff, | ) | Civil Action No. 7:09-CV-00489 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| VDOC, et al., | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

This is an action pursuant to 42 U.S.C. § 1983 brought by *pro se* plaintiff, Terry Gene Marshall, against various officials of the Virginia Department of Corrections and the Middle River Regional Jail. Marshall, who has undergone various sex change procedures, complains that defendants have discriminated against him and violated his constitutional rights by placing him in a special housing unit rather than in the general population. The court concludes that Marshall has not stated a plausible equal protection claim,[1] and dismisses the suit pursuant to 28

---

[1] From a pleading perspective, a "document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). When liberally construed, however, the complaint, including any exhibits attached to the complaint, see Fayetteville Investors v. Commercial Builders, 936 F.2d 1462, 1465 (4th Cir. 1991), "must [still] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal v. Ashcroft, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.
"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. As such, "conclusory statements . . . do not suffice." Id. Furthermore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Then, the court should assume the veracity of "well pleaded" factual allegations, if there are any, and "determine whether they plausibly give rise to an entitlement to relief." Id. "This approach recognizes that 'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing

U.S.C. § 1915A(b)(1).

I.

Marshall alleges that approximately six weeks after entering the Virginia Department of Corrections ("VDOC"), he was transferred to Middle River Regional Jail ("MRRJ"), a non-VDOC facility. Upon his arrival at MRRJ, Marshall states that he was initially placed in the segregation unit but then transferred to the Class 1 Dorm A Special Housing Unit the next day. Marshall claims that as a result of being transferred to a non-VDOC facility he is now subject to higher medical co-pays. He also maintains that he should be placed in the general population and that the defendants are discriminating against him by placing him in the special housing unit because he is homosexual. Marshall states that he once had breast implants and that the implants have since been removed from his body; that he was castrated by choice and had the "gris[t]le removed from [his] penis"; and that he takes various estrogen and progesterone medications. Despite the augmentations to his body, Marshall states that he has "the same equipment that any other male in the Virginia Department of Corrections" has. As relief, Marshall requests to be transferred to a level 3 camp within the VDOC.

---

Twombly, 550 U.S. at 557).
    Turning to this case, the factual allegations in the complaint and accompanying documents fall far short of raising a plausible claim to relief. Nothing Marshall has alleged in his pleadings raises a right to relief above the speculative level. In reaching this conclusion, the court notes that it does not view this as a technical pleading failure that disadvantages a *pro se* plaintiff. To the contrary, the court has assumed the veracity of the relevant factual allegations and has concluded that they do not "plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950.

## II.

Marshall maintains that defendants violated his right to equal protection[2] by not placing him in the general inmate population and that they discriminated against him because he is homosexual. The facts he alleges to support that claim, however, only plausibly support a claim that he was not placed in the general population because he has undergone procedures to change his sex – allegations which contextually do not advance a plausible equal protection claim.[3] Accordingly, the Court dismisses the claim.

It is not a violation of the Equal Protection Clause to house separately from the general population inmates who have undergone sex change procedures, given the special security concerns those inmates present. See Farmer v. Brennan, 511 U.S. 825 (1994). Indeed, prison officials may be held liable if they are deliberately indifferent to a substantial risk of serious harm

---

[2] "[W]hile a prisoner does not forfeit his constitutional right to equal protection by the fact he has been convicted of a crime and imprisoned, prisoner claims under the equal protection clause . . . must still be analyzed in light of the special security and management concerns in the prison system." Morrison v. Garraghty, 239 F.3d 648, 655 (4th Cir. 2001). "Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" Veney v. Wyche, 293 F.3d 726, 731 (4th Cir. 2002) (quoting Heller v. Doe, 509 U.S. 312, 319-20 (1993)). Marshall's claim does not involve any fundamental right, and the facts he alleges do not support a reading that he was discriminated against on the basis of a suspect classification. Therefore, the court need only determine whether the allegedly disparate treatment is "reasonably related to [any] legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 225 (2001) (citation omitted).

[3] The Court does not suggest that prison officials cannot make housing assignments based on sexual orientation. Indeed, the Court of Appeals has held that they can. See Veney v.Wyche, 293 F.3d 726, 732-35 (reasoning that prison officials' concerns about sexual activity between inmates, sexually transmitted disease, bias-motivated attacks, and sexual assaults support that court's holding that segregation of homosexual male inmates was based on legitimate correctional interest). But the facts Marshall alleges do not squarely present such a claim, so the court does not purport to decide it.

3

created by placing such an inmate in the general population. See Farmer, 511 U.S. at 825; Greene v. Bowles, 361 F.3d 290 (6th Cir. 2004); Powell v. Schriver, 175 F.3d 107 (2d Cir. 1999). The courts cannot demand on the one hand that prison officials take appropriate measures to protect inmates by removing them from the general population where they might be harmed and then on the other hand subject those officials to liability for violating the Equal Protection Clause for taking those measures.

Here, according to his own pleadings, Marshall has had breast implants (although he alleges they were defective and have been removed); he was castrated by choice; he had the "gris[t]le removed from [his] penis"; and he takes various estrogen and progesterone medications. Given the numerous medical interventions to alter his sex, it is simply not plausible that Marshall is similarly situated to the general inmate population. To state a viable equal protection claim, however, Marshall must allege facts demonstrating that prison officials have treated him differently than other similarly situated inmates.[4] He must "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Although it may be true that he was intentionally and purposely separated from the general inmate population, he is not similarly situated. No doubt recognizing that reality, he preemptively argues that he has "the same equipment that any other male in the Virginia Department of Corrections" has, but the facts he pleads belies that assertion.

---

[4] The court notes that Marshall does not allege that he is being treated differently from other inmates who have undergone similar sex-change procedures, but only that he is being treated differently from the general male prison population at large. The court does not imply that an equal protection claim would be impossible for an inmate who had undergone sex-change procedures, only that the facts as alleged do not make out a plausible claim in this case.

4

## III.

For the reasons stated, Marshall's complaint[5] is dismissed pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim.[6]

The Clerk is directed to send a certified copy of this Memorandum Opinion and accompanying Order to plaintiff.

**ENTER:** This 8th day of January, 2010.

United States District Judge

---

[5] To the extent Marshall's allegations can be construed as a claim that his confinement in the special housing unit constitutes a violation of his due process rights under the Fourteenth Amendment, it also fails. In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Accordingly, prisoners do not have a constitutionally recognized liberty interest in a particular security classification nor a constitutional right to be confined in a particular prison or section of a prison. See Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976).

[6] To the extent that Marshall may seek to raise a claim that inmates in special housing units are denied opportunities in violation of their right to equal protection of the laws, this dismissal is without prejudice.